## BALTIMORE TRANSIT EMPLOYEES' CREDIT UNION *v.* THORNE ET AL.

[No. 167, October Term, 1956.]

*Decided June 27, 1957.*

*Motion for rehearing filed on behalf of Joseph Hazard July 25, 1957, denied September 24, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and PRESCOTT, JJ.

*John W. Hessian, Jr.,* and *Arnold Fleischmann,* with whom were *Walter W. Hamill* and *Smalkin, Hessian, Martin & Taylor* on the brief, for the appellant.

*Bernard E. Stern* and *Allan H. Fisher, Jr.,* with whom was *Leon Abramson* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree sustaining respondents', appellees', demurrer to complainant's, appellant's, bill of complaint.

The bill of complaint, filed on January 19, 1956, by Baltimore Transit Employees' Credit Union against Walter I. Thorne and Joseph Hazard, for the purposes of this case, alleges that on February 3, 1955, Thorne borrowed from the complainant $4,257.50 and secured said loan by a promissory note accompanied by a chattel mortgage on a 1955 Ford automobile. This chattel mortgage was recorded in Baltimore County on May 26, 1955, three months and twenty-three days after its execution. Thorne failed to pay the indebtedness and there was due at the time of the filing of the bill of complaint $3,189.25, with interest from October 2, 1955. The said mortgage being in default, the complainant desires to foreclose it and sell the automobile to satisfy the mortgage

lien. The complainant has been advised that on or about October 25, 1955, Thorne sold the automobile to Archway Motors, Inc. Later Archway sold the Ford to Joseph Hazard, who now illegally holds and retains possession of it. The bill asks that an order be passed directing Thorne to pay the complainant the sum of $3,189.25, with interest and costs; if said sum is not paid on or before a date to be fixed by the court, a decree may be passed declaring the mortgagor's right of redemption forever barred and that a trustee be appointed to make sale of the Ford free and clear of all claims of the parties to the cause and those claiming by, from or under them; that the proceeds of the sale, after deduction of costs and expenses, be paid to the complainant to the extent of its mortgage claim; and that the respondent, Joseph Hazard, be required to deliver the automobile to the complainant and be restrained and enjoined from secreting or disposing of it in any manner whatsoever.

The title to the Ford· showed no lien and was permitted to remain in Thorne's possession and neither Archway nor Hazard had actual knowledge of the indebtedness or of the chattel mortgage. The chancellor sustained the demurrer to the bill with leave to amend. No amendment was made and an appeal was taken to this Court. The question before us is whether the chattel mortgage given by Thorne to the complainant, dated February 3, 1955, and not recorded until May 26, 1955, more than twenty days after its date, gave constructive notice to third parties from the time of its recording.

The following statutory provisions, Code, 1951, Article 21, are pertinent here:

### "Bills of Sale"

"49.   No personal property, of any description whatever, whereof the vendor, mortgagor, or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, as against subsequent purchasers * * * unless by bill of sale or mortgage acknowledged and recorded as herein provided; * * *."

"53.   Bills of sale shall be recorded in the county

or city where the vendor or donor resides within twenty days from the date thereof. If the vendor or donor resides out of the State, and the personal property conveyed by such bill of sale is located in this State, then such bill of sale shall be recorded in the county where such property is located, or in Baltimore City, if it be located in said city, within twenty days from the date of such bill of sale."

"54. A mortgage of personal property shall be executed, acknowledged and recorded as bills of sale."

"56. Mortgages of personal property shall be valid and take effect, except as between parties thereto, only from the time of recording; and in case of more than one mortgage, the one first recorded shall have preference."

These will be referred to throughout the opinion as Sections 49, 53, 54 and 56.

The provisions of Code, 1951, Article 16, Section 30, first enacted as Chapter 325, Acts of 1868, are also pertinent here. It is there provided:

"Whenever any deed or bill of sale shall have been duly signed and sealed by the parties thereto, but shall not have been acknowledged by the said parties, or any one of them, in the manner or form, or before the person authorized to take such act or acknowledgment, the circuit court for the county in which, by law, the said deed or bill of sale ought to be or to have been recorded, or the circuit courts of Baltimore City, if the said deed or bill of sale ought, by law to be or to have been recorded in said city, may, upon the petition of any party to said deed or bill of sale, or his or their assigns, or any person claiming under them, setting forth the defects in the acknowledgment of said deed or bill of sale, pass an order directing the other parties thereto to appear and answer the said petition, and may cause notice to be given to such parties by summons or publica-

tion, according to the practice of the said court, and may direct testimony to be taken in relation to the matters in said petition, or in said petition contained; and the said court may grant relief upon said petition by directing the said parties, or any of them, to acknowledge or to re-acknowledge the said deed or bill of sale, as the case may require; and the order of the said court, passed in the premises, directing the said acknowledgment to be made as aforesaid, shall operate in the same manner and to the same extent, from the date of the said order, as if the said party, ordered as aforesaid to acknowledge or re-acknowledge the said deed or bill of sale, had thereupon so done; provided, however, that the rights of any person who shall not be a party to said proceedings, as aforesaid, shall not be in any wise affected by said order."

The complainant contends that, although this chattel mortgage was not recorded within twenty days from its date, Archway and Hazard should be charged with constructive notice of it from the time it was actually recorded.

The chancellor, in sustaining the demurrer, stated that two constructions could be given to Section 56, read with the other Sections: one, that a mortgage of personal property would be valid and effective from the time of recording whether that time was within twenty days of its date or thereafter; the other, that such chattel mortgage would be valid and effective only from the time of recording within the twenty-day period, so that the preference established by the statute would be between mortgages recorded within twenty days of their date. He also stated: "There is a plausibility and appeal in the argument that the statutory language should be interpreted to make a chattel mortgage valid and effective from the time of record, whether or not that be within the twenty day period." He was of opinion, however, that the authorities seemed to show that a strict construction be given to the requirement of recording within a specified time, and that that specified time was within the twenty-day period.

Sections 49 and 53 were enacted in substantially their present form by Chapter 8, Acts of 1729. Also, that Act required chattel mortgages to be recorded in twenty days. The case of *Gill, et al. v. Griffith, et al.*, 2 Md. Ch. 270, 286, was decided at the March Term, 1848. There, a chattel mortgage was executed on March 22, 1845, renewed from time to time, but not recorded until June 18, 1846, to save embarrassment to the mortgagor. Other persons had relied on mortgagor's ostensible ownership of the property. It was there argued that a deed or mortgage of personal estate, whereof the vendor or mortgagor remained in possession, was not void by construction of law, even though it was not recorded in time, and that this position was shown to be sound, by referring to the Act of 1785, Chapter 72, Section 11, which, under the circumstances mentioned in the Act, authorized the Chancery Court to order such deed to be recorded. It was there said by the chancellor: "But this power, by the provision of the section, cannot be executed to the prejudice of subsequent creditors and purchasers, and, therefore, the failure to record, as required by the Act of 1729, would, looking alone to the language of the Act, seem to be conclusively fatal. Such a deed may nevertheless be valid, notwithstanding the omission to have it recorded, as has been shown by the case of *Hudson v. Warner and Vance,* [2 H. & G. 415], when the object sought to be attained by the Legislature has been accomplished in some other way. Show that the party complaining has actual notice, that is, that as to him, it is not a secret conveyance, and his objection will not be attended to. Give a party actual notice, and in the language of Mr. Justice Story, his conscience is bound, whilst the operation of the registration Acts, is only to bind the title. 1 *Story Eq.* sec. 401. All the decisions of the Courts upon the Act of 1729, and all subsequent legislation, concur, in my judgment, in condemning this attempt to evade the legislative will, in regard to the transfers of the title to personal estate. The possession of such property, as is known, carries with it much more forcible evidence of title, than the possession of real estate. It passes by delivery, and its rapid transfer from hand to hand, is indispensable to the operations of commerce.

Hence the time for recording deeds of personal estate is limited to twenty days. * * * The law-making power, seems never to have modified, in any respect, the Act of 1729, to prevent secret sales, mortgages and gifts, of goods and chattels, of which the vendor, mortgagor, or donor, should remain in possession, but these have continued exposed to the stern, but, in my judgment, wholesome provisions of that Act." We must note that *Gill v. Griffith* involved the rights of creditors who became such between the time of execution of the mortgage and the time of its being recorded, and the holder of the mortgage also deliberately sought to defeat the very purpose of the recording statute. In both of these respects the case differs substantially from the case at bar. We also note that at the time of the decision in *Gill v. Griffith,* Section 56, which was originally enacted by Chapter 154, Acts of 1856, was not then in effect. Therefore, the *Gill* case, *supra,* is not an interpretation of Section 53 with Section 56. By Chapter 154, Acts of 1856, Sections 54 and 56 were first enacted in substantially their present form.

In the case of *Pleasanton v. Johnson,* 91 Md. 673, 47 A. 1025, decided November 15, 1900, Vandergrift gave Pleasanton a chattel mortgage, executed according to the laws of Delaware, on certain personal property at that time in Delaware where both were residents. The chattels were removed to Kent County, Maryland, and the chattel mortgage was recorded there within twenty days from its date. Attachments were issued out of the Circuit Court for Kent County against Vandergrift and levied on the personal property covered by the chattel mortgage from Vandergrift to Pleasanton, who intervened in the attachment cases as claimant. The question presented was whether this chattel mortgage on personal property, not having been executed in accordance with the Maryland statute as it did not contain an affidavit that the consideration was true and *bona fide* as therein set forth, was valid against the attaching creditors of Vandergrift. The Maryland statute provided that no bill of sale or mortgage of personal property shall be valid except as between the parties unless the aforesaid affidavit was made by the mortgagee. This Court, in holding that the chattel mortgage was invalid

as against attaching creditors, stated that it would not only be repugnant to the policy of this State, but contrary to the very letter of the statute if this mortgage was declared superior to the attachments issued by the parties who were not shown by the record to have any notice of the existence of the mortgage when the debts due them by Vandergrift were incurred. Evidently no advantage was taken of Article 16, Section 30, *supra,* by any of the parties.

In *Millikin v. Second National Bank of Baltimore,* 206 F. 14, 17, decided May 21, 1913, (Circuit Court of Appeals, Fourth Circuit), the bank loaned one John Riehl $14,000.00 secured by a chattel mortgage on a vessel. This mortgage was recorded in the Custom House in Baltimore where all vessels were registered and enrolled. It was not recorded in the record office of the Superior Court of Baltimore City. Riehl was adjudicated bankrupt and his trustee sought to sell the mortgaged property. The bank asserted the chattel mortgage. That court, in finding for the trustee, quoted a part of the aforesaid quotation from *Gill v. Griffith, supra,* where it was said that the Act of 1729 had never been modified, and stated: "It appears that the Legislature of Maryland has from time to time changed the law in regard to the registration of deeds of conveyances of real estate, but it has never changed the law in regard to the registration of bills of sale, mortgages and gifts of goods and chattels where the vendor, mortgagor, or donor remains in possession." The Court in that case referred to the case of *Pleasanton v. Johnson, supra,* and said in reference to that case: "If the failure to comply with this requirement [affidavit as to the consideration] renders a mortgage invalid, does it not necessarily follow that a failure to comply with the requirements of the section relating to recordation of mortgages would render such instrument invalid?" In quoting from the *Gill* case, *supra,* that the Act of 1729, *supra,* had never been modified, the Court apparently overlooked the fact that Section 56 was enacted after the decision in that case. There also appears to be a great difference between recording a chattel mortgage at the wrong place rather than in the proper time. In the *Millikin* case, *supra,* there was no reason for creditors to look in the records

of the Custom House for a chattel mortgage which should have been recorded in the Superior Court of Baltimore City.

Of course, as emphasized in the recent cases of *Mohr v. Sands,* 213 Md. 206, 131 A. 2d 732, and *Cottman v. Wagner,* 213 Md. 73, 130 A. 2d 749, possession of personal property is important in determining its title. However, the real intent of the statutes should prevail and all sections pertinent should be considered in order to ascertain the intent of the Legislature. The real intent will prevail. *Erb v. Grimes,* 94 Md. 92, 105, 50 A. 397. Of course, all statutes on the same subject matter should be harmonized as far as possible. It was said in *Gregg v. Public Service Commission,* 121 Md. 1, 30, 87 A. 1111: "It is a well recognized rule that all statutes upon the same subject matter are to be harmonized as far as possible, and this is true whether the Acts relating to the same subject were passed at different dates, separated by long or short intervals. They are all to be compared, harmonized if possible, and, if not susceptible of a construction which will make all their provisions harmonize, they are made to operate together so far as possible consistent with the evident intent of the latest enactment. *Sutherland on Statutory Construction,* section 283."

This is a close question as stated by the chancellor. Apparently no Maryland case has ruled on this point and on account of differences in the statutes in the various states, out of state decisions are not helpful. Apparently Section 56 has frequently been considered by mortgagees of personal property to govern, and Article 16, Section 30, *supra,* tends to support that view. In following the necessary steps under that Section, by filing a petition for recording the defectively acknowledged bill of sale, serving notice on parties, taking testimony, and having an order signed, all could hardly be accomplished in twenty days. It therefore appears that it would be useless to proceed under that Section if a bill of sale, recorded after the twenty-day period, were invalid. By passage of that Section the Legislature must have considered that Section 56 governed and that a mortgage of personal property is valid and takes effect from the time of recording. We are therefore of the opinion that the proper construction

of Section 56, when read with Section 30 of Article 16, and the other Sections mentioned above, authorizes the recording of chattel mortgages after twenty days from the date of the chattel mortgage, and gives constructive notice from the date of recording. We are, therefore, of opinion that the demurrer in this case should have been overruled.

> *Decree reversed, with costs, and cause remanded for further proceedings.*